861 P.2d 948

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Castulo ARAGON, Defendant–Appellant.**

**No. 21119.**

Supreme Court of New Mexico.

Sept. 20, 1993.

Rehearing Denied Oct. 20, 1993.

Sammy J. Quintana, Chief Public Defender and Bruce Rogoff, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

Tom Udall, Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

RANSOM, Chief Justice.

The first appeal of this case was decided in an unpublished memorandum opinion by the Court of Appeals. The question now certified to us by the Court of Appeals on a second appeal is whether double jeopardy applies to habitual offender proceedings when in the original enhancement proceedings the State had not shown which prior felonies were adduced for what purpose.

The calendar notice from the Court of Appeals characterizes this as a problem of insufficient evidence at the time Castulo Aragon was first at jeopardy. In this regard, we consider whether to follow *State v. Linam*, 93 N.M. 307, 600 P.2d 253, *cert. denied*, 444 U.S. 846, 100 S.Ct. 91, 62 L.Ed.2d 59 (1979). Aragon argues that *Linam* is not good law in the face of *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), and *Bohlen v. Caspari*, 979 F.2d 109 (8th Cir.1992).

In the certification from the Court of Appeals, Judge Black states that the Tenth Circuit Court of Appeals implicitly has agreed with the *Bohlen* ruling that double jeopardy protections apply to habitual offender proceedings in certain circumstances. He makes that statement because, in his view, in *Linam v. Griffin*, 685 F.2d 369 (10th Cir.1982), *cert. denied*, 459 U.S. 1211, 103 S.Ct. 1207, 75 L.Ed.2d 447 (1983), the court distinguished between situations in which the state could retry a defendant for enhancement purposes and those in which the state could not. Although the federal *Linam* decision stated that *Bullington* did not apply to the *Linam* facts (and *Bohlen* relied on *Bullington* for its holding), Judge Black posits that under the facts in the instant case *Bullington* and *Bohlen* are fundamentally opposed to our decision in *State v. Linam*. We hold that double jeopardy generally does not attach in habitual offender sentencing proceedings, affirm our decision in *Linam*, and affirm the enhanced sentence from which Aragon appeals.

*Factual and procedural history.* On November 16, 1988, Aragon was convicted of three felonies: one occurring on May 2, 1988 and the other two on May 19, 1988. In April of 1990, Aragon was charged with the offense of felon in possession of a firearm, to which he unexpectedly pleaded nolo contendere at a motion hearing. In accepting the plea, the court took notice of the preliminary hearing record that evinced the three prior felonies, but did not specify the predicate felony relied upon for the offense of felon in possession. After the plea was accepted, the prosecutor informed

the court that the State would file a supplemental information and implied that one of the three felonies would be used for the predicate felony and one occurring during a separate episode would be used for enhancement. Subsequently, the State filed a supplemental information alleging that Aragon was an habitual offender because he previously had been convicted of the two felonies of May 19, 1988. After a hearing, the court sentenced Aragon as an habitual offender. Aragon appealed and the Court of Appeals vacated the sentence because it could not determine which of the three prior convictions served as a predicate for Aragon's guilty plea. The Court was concerned that the felony serving as the predicate offense for the plea also could have been used to support habitual offender status. The case was remanded for rehearing. At the second proceeding, the State alleged all three prior felonies in support of habitual offender status. Aragon filed a motion to dismiss the supplemental information on the grounds that these felonies served as the factual basis for the felon in possession charge. The trial court denied the motion, heard evidence, and again sentenced Aragon under NMSA 1978, Section 31–18–17(B) (Repl. Pamp.1990), as an habitual offender with one prior conviction.

*Bullington and Bohlen distinguished.* Both the state and federal *Linam* decisions held that jeopardy does not attach to New Mexico habitual offender proceedings. *See Linam,* 93 N.M. at 310, 600 P.2d at 256; *Linam,* 685 F.2d at 372. The rationale we relied upon was that jeopardy does not attach because the proceeding involves "only sentencing, not trial of an offense." *Linam,* 93 N.M. at 310, 600 P.2d at 256. The Tenth Circuit first held that even if double jeopardy did attach to habitual offender proceedings, no prohibition exists against resentencing a defendant who over-turns his sentence because the state failed to ascertain the time of the prior offenses used for enhancement purposes. It likened the failure to trial error as opposed to insufficient evidence. "[Presenting evidence of the sequence of prior convictions] is merely a formal matter, not a substantive one." *Linam,* 685 F.2d at 373. Alternatively, the Tenth Circuit held that the issue was controlled by the holding in *United States v. DiFrancesco,* 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980). Before addressing that case, however, we will consider how *Bullington* and *Bohlen* are distinguished.[1]

The *Bullington* court held that double jeopardy applied to a second sentencing hearing in a capital murder case such that the defendant could not be sentenced to death. *Bullington,* 451 U.S. at 446, 101 S.Ct. at 1862. It was not an habitual offender hearing. The death penalty enhancement was based on whether there existed certain aggravating circumstances surrounding the murder, resulting in a proceeding tantamount to a guilt or innocence determination. In the first enhancement proceeding, the jury found that the prosecutor had not proved aggravating circumstances that would require the death sentence. This finding was implicitly an acquittal.[2] Because the hearing bore the hallmarks of a trial on guilt or innocence, the prosecution was not given another opportunity to prove those circumstances in a second proceeding. *Id.* In New Mexico we also have determined that double jeopardy bars resubmission at a second sentencing hearing of aggravating circumstances when no substantial evidence of such circumstances was presented at the first death penalty hearing. *State v. Henderson,* 109 N.M. 655, 663, 789 P.2d 603, 611 (1990). Nonetheless, we have determined that habitual offender proceedings do not involve a determination of guilt

---

1. The Tenth Circuit also distinguished *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), stating that reversal for trial error, as distinguished from evidentiary insufficiency, does not mean that the government has failed to prove its case. *Linam,* 685 F.2d at 373.

2. An "acquittal" has been defined as a ruling of the judge that actually represents a resolution in the defendant's favor of some or all of the factual elements of the offense charged. *See United States v. Martin Linen Supply Co.,* 430 U.S. 564, 571, 97 S.Ct. 1349, 1354, 51 L.Ed.2d 642 (1977).

of any offense. *State v. Nelson,* 96 N.M. 654, 657, 634 P.2d 676, 679 (1981); *see also French v. Cox,* 74 N.M. 593, 595, 396 P.2d 423, 425 (1964) ("The [former habitual criminal act] does not make the conviction of prior felonies the subject of punishment, as such, as a separate offense.").

*Bullington* has been applied by the Supreme Court in *Arizona v. Rumsey,* 467 U.S. 203, 205, 104 S.Ct. 2305, 2307, 81 L.Ed.2d 164 (1984), and *Poland v. Arizona,* 476 U.S. 147, 154, 106 S.Ct. 1749, 1754, 90 L.Ed.2d 123 (1986), both capital murder sentencing cases. In *Rumsey,* the Court found that Arizona's death sentence enhancement procedure was similar to the one in *Bullington* such that the Double Jeopardy Clause applied to bar a second sentencing procedure after the trial court determined the defendant was "acquitted" of the death sentence because there was no aggravating circumstance. *Rumsey,* 467 U.S. at 211, 104 S.Ct. at 2310. Even though the trial court erroneously limited the definition of "pecuniary gain" and the facts at trial were sufficient to prove that the aggravating circumstance accompanied the murder, the Supreme Court barred resentencing of the defendant to death.

■ The Court in *Poland* stated that the "concern with protecting the finality of acquittals is not implicated when … a defendant is sentenced to death, i.e., 'convicted.' There is no cause to shield such a defendant from further litigation; further litigation is the only hope he has." *Poland,* 476 U.S. at 156, 106 S.Ct. at 1756. Implicit in the *Poland* opinion is a two-step process to determine whether the double jeopardy protections apply to sentencing procedures. The court examines whether the hearing is equivalent to a guilt or innocence trial under *Bullington.* If it is, the court then determines whether the previous factfinder or appellate court made a determination of innocence tantamount to an acquittal. *Cf. County of Los Alamos v. Tapia,* 109 N.M. 736, 739, 790 P.2d 1017, 1020 (1990) (hold-

ing that dismissal of an action did not constitute "acquittal", thus double jeopardy principles did not bar further proceedings).

*Bohlen* applied *Bullington* because the court believed that Missouri's habitual offender proceeding has protections similar to a trial on guilt or innocence. *Bohlen,* 979 F.2d at 113 (e.g., the charging instrument must plead all essential facts and the state must prove all facts beyond a reasonable doubt). The *Bohlen* court applied the "guilt or innocence" characterization to the determination of whether the specific defendant committed the prior felonies. In contrast, the federal *Linam* court noted that New Mexico procedure "tends to be a formality which bears little resemblance to a trial." *Linam,* 685 F.2d at 374.

■ The prosecution in *Bohlen* failed to present *any* evidence of prior convictions at the sentencing hearing or at the underlying trial. In contrast, at Aragon's sentencing hearing the prosecution presented evidence of two prior felony convictions committed on the same day and proved that the defendant was the same person named in the judgment. Thus, the State satisfied its burden in the sentencing hearing. In *Bohlen* the prosecution failed. The Court of Appeals remanded this case in the first appeal because it could not determine on which felony Aragon's conviction for felon in possession of a firearm was based.[3] At most, the case was remanded for technical error. The trial court had before it the prima facie evidence that Aragon had three prior felony convictions, all entered on November 16, 1988. Aragon never claimed that he was not the person named in the judgment or that the convictions were illegally obtained. The State did not offer new evidence when it alleged all three prior felonies in the second supplemental criminal information. There is no question of guilt or innocence because as *Linam* states, "[t]he evidence is a matter of record. It waits to be presented properly so

---

**3.** It appears that remand for resentencing was unnecessary because Aragon pleaded guilty to a fourth felony; the State was never required to name the specific felony on which the conviction was based. As long as at least two felonies existed, either of which could be used to support the underlying conviction or enhancement, Aragon could not be prejudiced by failure to designate which felony was used for which purpose.

that the ... convictions can become part of the record." *Linam,* 685 F.2d at 373.

■ *DiFrancesco controls because this appeal involves sentencing and not guilt or innocence.* The United States Supreme Court first noted in its discussion of double jeopardy in *DiFrancesco* that

"The constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.... The underlying idea ... is that the State ... should not be allowed to make repeated attempts to convict an individual for an alleged offense, ... enhancing the possibility that even though innocent he may be found guilty."

*DiFrancesco,* 449 U.S. at 127–28, 101 S.Ct. at 432, quoting *Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 223–24, 2 L.Ed.2d 199 (1957)). Quoting *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969), the Court also noted that the double jeopardy guarantee consists of three protections: " 'against a second prosecution for the same offense after acquittal.... against a second prosecution for the same offense after conviction.... [a]nd ... against multiple punishments for the same offense.' " *DiFrancesco,* 449 U.S. at 129, 101 S.Ct. at 433. The Court then discussed the purposes of the Double Jeopardy Clause in terms of preserving the finality of judgments and as a barrier to " 'affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding.' " *Id.* at 128, 101 S.Ct. at 432–33 (quoting *Burks,* 437 U.S. at 11, 98 S.Ct. at 2147). "Implicit in this is the thought that if the Government may reprosecute, it gains an advantage from what it learns at the first trial about the strengths of the defense case and the weaknesses of its own." *Id.* The Court concluded that neither the history of sentencing practices, nor the pertinent rulings of the Court, nor considerations of double jeopardy policy support the idea that a criminal sentence is to be accorded constitutional finality and conclusiveness similar to that which attaches to a jury's verdict of acquittal. *Id.* 449 U.S. at 132, 101 S.Ct. at 434. "Historically, the pronouncement of a sentence has never carried the finality that attaches to an acquittal." *Id.* at 133, 101 S.Ct. at 435. "The double jeopardy considerations that bar reprosecution after an acquittal do not prohibit review of a sentence.... This limited appeal [of the sentence imposed] does not involve a retrial or approximate the ordeal of a trial on the basic issue of guilt or innocence.... The defendant's primary concern and anxiety obviously relate to the determination of innocence or guilt, and that already is behind him." *Id.* at 136, 101 S.Ct. at 437. Because our habitual criminal proceedings are not "prosecutions" of an "offense" and sentencing does not imply guilt or innocence of any greater crime, under *DiFrancesco* double jeopardy does not attach.

After careful consideration of *Bullington,*[4] *DiFrancesco,* and other Supreme

---

4. For other cases distinguishing *Bullington, see United States v. Rodriguez–Gonzalez,* 899 F.2d 177, 181 (2d Cir.1990) (holding that *Rumsey* and *Bullington* arose in unique contexts of capital sentencing and are therefore inapplicable to the facts of the case at bar); *Davis v. Kemp,* 829 F.2d 1522, 1533 (11th Cir.1987) (holding *Bullington* did not prevent resentencing in capital murder case because defendant had not been acquitted); *Knapp v. Cardwell,* 667 F.2d 1253, 1264 (9th Cir.1982) (declining to apply *Bullington* because sentencing procedure did not resemble trial and because defendant not acquitted in first trial); *Dobbert v. Strickland,* 532 F.Supp. 545, 556 (M.D.Fla.1982) (holding that critical distinction was that the role of the jury in Florida was advisory and judge not bound, so recommendation of life sentence was not an "acquittal"). *See also Denton v. Duckworth,* 873 F.2d 144, 148 (7th Cir.1989) (holding that double jeopardy clause did not bar redetermination of habitual offender status under Indiana law after one of prior felonies used to enhance current felony was vacated, court set aside finding of habitual offender status and granted leave to refile charge; state could allege new prior unrelated felony conviction to satisfy requirement because statute did not create a separate offense and did not deal with the underlying facts of the substantive charge). *Cf. Bullard v. Estelle,* 665 F.2d 1347, 1359–60 (5th Cir.1982) (holding that Texas habitual offender proceedings bear all hallmarks of trial of guilt or innocence; appellate court found insufficient evidence to enhance sentence because of failure to provide evidence of order of convictions, so double jeop-

Court and federal decisions that apply and explain the difference between the two cases,[5] we are satisfied that our rule that double jeopardy generally does not apply in New Mexico habitual offender proceedings is still good law and that it does not infringe on any federal constitutional rights.

■ *Under the facts of this case, double jeopardy does not apply because the State committed only procedural error.* Even if all habitual offender proceedings were subject to double jeopardy limitations, under the facts of this case double jeopardy would not apply. In *Lockhart v. Nelson,* 488 U.S. 33, 38, 109 S.Ct. 285, 289, 102 L.Ed.2d 265 (1988), Arkansas' habitual offender statutes provided that defendants convicted of class B felonies could be sentenced to enhanced terms of imprisonment if the state proved beyond a reasonable doubt that the defendant had at least four prior felony convictions. The jury found the state met its burden, but three years later a federal court set aside the enhanced sentence because the defendant proved that one of the four felonies had been pardoned and thus could not be counted as a conviction. The Eighth Circuit Court of Appeals affirmed, holding that the defendant could not be resentenced because the remaining three convictions were legally insufficient to sustain the original sentence. Reversing, the Supreme Court held that when evidence is insufficient, double jeopardy does not forbid resentencing so long as the sum of the evidence offered and admitted would have been sufficient. The error would be treated as a procedural trial error, not as an acquittal.

Had the defendant offered evidence at the sentencing hearing to prove that the conviction had become a nullity by reason of the pardon, the trial judge would presumably have allowed the prosecutor an opportunity to offer evidence of another prior conviction to support the habitual offender charge. Our holding today thus merely recreates the situation that would have been obtained if the trial court had excluded the evidence of the conviction because of the showing of a pardon.

*Lockhart,* 488 U.S. at 42, 109 S.Ct. at 291–92.

*Conclusion.* Analyzing this case under *Bullington, DiFrancesco,* and *Lockhart,* it is clear that double jeopardy did not attach to the habitual offender proceeding initially because the proceeding did not have the hallmarks of a trial of guilt or innocence and there was no prosecution of an offense. Even if those factors did exist, the reversal of the first sentence enhancement was not tantamount to an acquittal. The trial court is affirmed.

**IT IS SO ORDERED.**

BACA and FROST, JJ., concur.

---

ardy prevented resentencing), *vacated on other grounds,* 459 U.S. 1139, 103 S.Ct. 776, 74 L.Ed.2d 987 (1983). We note that the *Bullard* rationale was relied on by *Nelson v. Lockhart,* 641 F.Supp. 174 (E.D.Ark.1986), which was reversed by *Lockhart v. Nelson,* 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988); therefore, the *Bullard* rationale seems to be on shaky ground.

5. *See, e.g., Pennsylvania v. Goldhammer,* 474 U.S. 28, 30, 106 S.Ct. 353, 354, 88 L.Ed.2d 183 (1985) (applying *DiFrancesco* instead of *Bullington* and stating that "a resentencing after an appeal intrudes even less upon the values protected by the Double Jeopardy Clause than does a resentencing after a retrial"); *Lee v. United States,* 432 U.S. 23, 32–33, 97 S.Ct. 2141, 2146–47, 53 L.Ed.2d 80 (1977) (holding that failure to properly draft an information, which requires dismissal upon request, even after the trial court heard all the evidence, is trial error for which double jeopardy will not attach upon retrial and stating "[w]here the defendant, by requesting a mistrial, exercised his choice in favor of terminating the trial, the Double Jeopardy Clause generally would not stand in the way of reprosecution. Only if the underlying error was 'motivated by bad faith or undertaken to harass or prejudice,' ... would there be any barrier to retrial....") (citation omitted).