# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                  **NO. 28,930**

**JEREMY MUMAU,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Stephen Bridgforth, District Judge**

Gary K. King, Attorney General
Santa Fe, New Mexico
Max Shepherd, Assistant Attorney General
Albuquerque, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**CASTILLO, Judge.**

Defendant appeals his convictions for aggravated assault against a household

member and battery against a household member and contends that the enhancement of his sentence as a habitual offender needs to be set aside because it was based on inadmissible evidence. We proposed to affirm Defendant's convictions but to reverse the habitual offender enhancement in a notice of proposed summary disposition. Defendant and the State have filed timely memoranda in opposition. Remaining unpersuaded by the memoranda filed by the parties, we affirm Defendant's convictions and reverse and remand the habitual offender enhancement portion of Defendant's sentence.

**Double Jeopardy**

Defendant contends that his convictions for aggravated assault against a household member and battery against a household member violate his constitutional right to be free from double jeopardy. [DMIO 1-5] We disagree.

We apply a de novo standard of review to the constitutional question of whether there has been a double jeopardy violation. *See State v. Andazola*, 2003-NMCA-146, ¶ 14, 134 N.M. 710, 82 P.3d 77. Defendant was convicted of aggravated battery against a household battery with a deadly weapon pursuant to NMSA 1978, Section 30-3-13(A) (1995), and battery against a household member pursuant to NMSA 1978, Section 30-3-15 (2008). [RP 113-118] The evidence shows that the victim, Defendant's mother, testified that Defendant came home in the morning and appeared

2

to be high on drugs. [DMIO 1] When the victim tried to question Defendant, he grabbed a circular saw and grabbed the victim by the back of the neck and hair. [DMIO 1-2] He raised the saw up to her face and asked, "[H]ow would you like this?" [DMIO 2] The victim testified that she was afraid Defendant might hit her with the saw. [DMIO 2]

Defendant claims that both his convictions are based on the same conduct, grabbing the victim by the neck and threatening her with a circular saw. [DMIO 3] He then argues that, since his conduct was unitary, his conviction and sentence for both offenses violates the prohibition against double jeopardy. [DMIO 3-5] We disagree.

Defendant is being charged with crimes under two different statutes. In determining whether the two charges should merge or one charge be dismissed to avoid a double jeopardy violation, we undertake a two-part test. *See State v. Carrasco*, 1997-NMSC-047, ¶ 22, 124 N.M. 64, 946 P.2d 1075. First, we ask whether the conduct underlying the offenses is unitary, i.e., whether the charges under both statutes are based upon the same conduct. *Id.* If so, we then ask "whether the Legislature intended to impose multiple punishments for the unitary conduct." *Id.*

In this case, we presume without deciding that Defendant is correct that his conduct was unitary because his actions in grabbing the victim's head and neck and

threatening her with the circular saw occurred at the same time and in the same place. [DMIO 3-4] However, contrary to Defendant's contention, our review of the aggravated assault against a household member and battery against a household member statutes indicate that the Legislature intended to impose multiple punishments for those two crimes. [DMIO 4] *See State v. Cowden*, 1996-NMCA-051, ¶¶ 5-14, 121 N.M. 703, 917 P.2d 972 (holding that the defendant's convictions for assault with intent to commit a violent felony and aggravated battery with a deadly weapon did not violate double jeopardy because the Legislature intended to separately punish these crimes).

To convict Defendant of aggravated assault against a household member, the State had to prove beyond a reasonable doubt that: (1) Defendant threatened the victim with a circular saw which caused her to believe Defendant was about to intrude on her bodily integrity or personal safety by touching or applying force to her in a rude, insolent or angry manner; (2) a reasonable person in the same circumstances as the victim would have had the same belief; (3) Defendant used a deadly weapon; and (4) the victim was a household member. [RP 76; DMIO 4] *Cf.* UJI 14-305 NMRA. To convict Defendant of battery against a household member, the State had to prove that (1) Defendant intentionally touched or applied force to the victim by "hitting, grabbing, pushing or pulling" her; (2) Defendant "acted in a rude, insolent or angry

4

manner;" and (3) the victim was a household member. [RP 80] *Cf.* UJI 14-320 NMRA. Review of the essential elements of these two crimes shows that "each crime contains an element that the other does not[; therefore,] we presume that the legislature intended to punish these offenses separately." *Cowden*, 1996-NMCA-051, ¶ 7.

Defendant contends that the crime of aggravated assault against a household member is subsumed in the elements of the crime of battery against a household member. [DMIO 5] He cites to the statutory language defining aggravated assault against a household member as "unlawfully assaulting or striking at a household member with a deadly weapon" and battery against a household member as "unlawful, intentional touching or application of force . . . when done in a rude, insolent or angry manner." [DMIO 4] *See* §§ 30-3-13(A)(1) and -15. We are unpersuaded.

The aggravated assault and battery statutes contain alternatives which may overlap. However, "we focus on the legal theory of the case and disregard any inapplicable statutory elements." *Cowden*, 1996-NMCA-051, ¶ 7; *see Carrasco*, 1997-NMSC-047, ¶ 27. In this case, as in *Cowden*, "each crime requires proof of at least one element that the other does not." *Cowden*, 1996-NMCA-051, ¶ 10. The aggravated assault charge required proof that the victim believed Defendant was about to intrude on her bodily integrity or personal safety and that Defendant used a deadly

weapon. [RP 76] The battery charge required proof that Defendant hit, grabbed, pushed, or pulled the victim. [RP 80]

Finally, we note that the two crimes address different social evils. *Id.* ¶ 12 (stating that, in determining if there is a double jeopardy violation, we "examine the particular social evil addressed by each statute"). Assault is proscribed because it puts the victim in fear while battery in this case is an actual physical injury. *Id.* (stating that the harm to the victim protected by the assault statutes is mental harm, i.e., putting persons in fear, while the harm protected by the battery statutes is physical harm, i.e., physical injury to persons). Therefore, we affirm Defendant's convictions and punishment for both crimes. *See id.* ¶ 10.

**Defendant's Sentence as an Habitual Offender**

Defendant challenges the admissibility and the sufficiency of the evidence relied upon by the State in the course of the habitual offender proceedings. [DS 7] In our notice of proposed summary disposition, we proposed to reverse on this issue.

In order to obtain a sentencing enhancement pursuant to the Habitual Offender Act, NMSA 1978, §§ 31-18-17 to -20 (1977, as amended through 2003), the State must prove by a preponderance of evidence that the defendant has prior convictions. *See State v. Smith*, 2000-NMSC-005, ¶¶ 9, 11, 128 N.M. 588, 995 P.2d 1030. The State bears the initial burden of establishing a prima facie case of a defendant's

6

previous convictions; the defendant is then entitled to bring forth contrary evidence. *See State v. Sedillo*, 2001-NMCA-001, ¶ 5, 130 N.M. 98, 18 P.3d 1051. "In determining whether the evidence supports a criminal charge, this Court views the evidence in the light most favorable to the State." *Id.* ¶ 6. The State ultimately bears the burden of persuasion. *See State v. O'Neil*, 91 N.M. 727, 729, 580 P.2d 495, 497 (Ct. App. 1978).

In this case, the State sought to enhance Defendant's sentence as an habitual offender by presenting a copy of a prior Texas conviction for aggravated assault. [RP 105, 134] Defendant objected because the State failed to submit a certified copy and could not confirm the authenticity of the document. [SMIO 2; DS 5-6] In addition to the copy of the conviction, the State introduced the testimony of Defendant's mother regarding the Texas conviction, but she could not remember the exact date of the conviction nor the specific crime of which Defendant was convicted. [SMIO 3] In our notice of proposed summary disposition, we proposed to hold that the district court erred in enhancing Defendant's sentence because the State failed to establish the prior conviction by a preponderance of the evidence.

As discussed in our notice, the copy of the prior conviction was inadmissible because it was not certified. *See* Rule 11-902(D) NMRA (providing that certified copies of judgments and sentences are self-authenticating and admissible); *State v.*

*Griffin*, 108 N.M. 55, 59, 766 P.2d 315, 319 (Ct. App. 1988) (holding that the district court did not abuse its discretion in admitting copies of the defendant's prior convictions because all of the exhibits were copies of public documents and they were self-authenticating under Rule 11-902 because they were certified by the custodian of the record in compliance with Rule 11-902(A), (B), or (C)). In addition, the State has failed to rebut our observation that it did not present extrinsic evidence to support authentication. *Cf. State ex rel. Human Services Dep't v. McDermott*, 1996-NMCA-048, ¶ 13, 121 N.M. 609, 916 P.2d 228 (noting that, pursuant to Rule 11-901 NMRA, judicial records may be admissible even if they are not certified and stating that "[a]ll that is necessary [for admission of judicial records] is the testimony of a witness who knows that the documents in fact came from the legal custodian of the document").

In its memorandum in opposition, the State explains that the prosecutor had both a certified copy of the Texas conviction and a Xerox copy, but states that he brought the wrong copy to court. [SMIO 2] We are unconvinced that the failure to bring the certified copy renders the non-certified copy admissible in the absence of some testimony as to its authenticity. *Cf. State v. Ellis*, 95 N.M. 427, 428, 622 P.2d 1047, 1048 (Ct. App. 1980) (recognizing that a public record is only admissible if it is self-authenticating or authenticated pursuant to Rule 11-901); *State v. Gallegos*, 91

N.M. 107, 111, 570 P.2d 938, 942 (Ct. App. 1977) (holding that copies of verdicts in prior criminal cases involving the defendant were properly admitted when "[e]ach document was authenticated under . . . Rule [11-]902"). In this case, the document was not certified or self-authenticating and no one with knowledge testified as to its authenticity. *See* Rules 11-901 and -902.

Other than the inadmissible copy of the Texas conviction, the only evidence introduced in support of Defendant's prior conviction was his mother's testimony which was vague as to the type of prior conviction or the date of the conviction. [SMIO 2-3; DS 5] We disagree that the mother's testimony was "particularly credible" or reliable given that she was the victim of the crime for which Defendant was being sentenced. [SMIO 2] Therefore, the information provided by the State was insufficient to prove Defendant's prior conviction by the preponderance of the evidence. *Cf. State v. Clements*, ___-NMSC ___, ¶¶ 31-32, ___ N.M. ___, ___ P.3d [No. 26,953 (filed May 5, 2009)], (holding that the State failed to make a prima facie showing of the defendant's prior Texas conviction).

Therefore, we reverse the habitual offender portion of Defendant's sentence and remand for re-sentencing. *See State v. Aragon*, 116 N.M. 267, 269-72, 861 P.2d 948, 950-53 (1993) (holding that "habitual offender proceedings do not involve a determination of guilt of any offense" so double-jeopardy protections generally do not

apply to such proceedings).

**CONCLUSION**

For the foregoing reasons as well as those set forth in our notice of proposed disposition, we affirm Defendant's convictions. We reverse the sentence enhancement portion of Defendant's sentence and remand for re-sentencing.

**IT IS SO ORDERED.**

_____
**CELIA FOY CASTILLO, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Chief Judge**

_____
**LINDA M. VANZI, Judge**